UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

EMILY ANDERS,
        Plaintiff,

        v.

JO ANNE B. BARNHART,
Commissioner of the Social
Security Administration,
        Defendant.

Case No. EDCV 04-00876 AJW

MEMORANDUM OF DECISION

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for a period of disability and disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed an application for benefits on June 1, 2000. [JS 2; Administrative Record ("AR") 100]. Her application was denied initially and on reconsideration. [JS 2]. Plaintiff requested a hearing, which was held before Administrative Law Judge (the "ALJ") Milan M. Dostal on August 22, 2002. [JS 2]. During the hearing, plaintiff was represented by counsel and testified on her own behalf. [AR 28-49]. Plaintiff's husband

testified at the hearing [AR 51-54], as did a vocational expert and a medical expert. [AR 49-77].

In a written decision dated October 10, 2002, the ALJ found that plaintiff met the nondisability requirements for a period of disability and disability insurance through the date of his decision. [AR 20]. The ALJ found that plaintiff had impairments that are "severe" within the meaning of 20 C.F.R. § 404.1520(b), but that those impairments did not meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [AR 20]. The ALJ found that plaintiff "can lift and carry 20 pounds occasionally, 10 pounds frequently. She can sit 6 hours in an 8 hour day, stand and walk 6 hours in an 8 hour day, with appropriate breaks. She can occasionally bend and squat. She can occasionally climb if not under the influence of drugs. She should avoid crawling. She should avoid work at heights or moving machinery. She should avoid driving if under the influence of drugs." [AR 21]. Additionally, the ALJ found that plaintiff had general body aches and pains, fatigue, and some anxiety and depression, but that those symptoms could be controlled by medication without significant adverse side effects. [AR 21].

The ALJ found that given her residual functional capacity ("RFC"), plaintiff could perform her past relevant work as a bank teller. [AR 21]. Accordingly, the ALJ concluded that plaintiff was not disabled as defined by the Social Security Act. [AR 21]. The Appeals Council denied plaintiff's request for review. [AR 6-8].

## Statement of Disputed Issues

The disputed issues are: (1) whether the ALJ gave proper weight to the opinion of plaintiff's treating psychiatrist; and (2) whether the ALJ gave proper weight to the opinion of plaintiff's treating physician.

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). Substantial evidence is more than a mere scintilla

but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Treating physicians' opinions**

Plaintiff contends that the ALJ erred in failing to give proper weight to the opinions of treating psychiatrist John Kohut, M.D., and treating physician Edwin Pasuhuk, M.D.

Although not binding on the Commissioner with respect to the existence of an impairment or the ultimate issue of disability, a treating physician's opinion "is generally afforded the greatest weight in disability cases." Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). In general, a treating physician's opinion is entitled to greater weight than those of examining or non-examining physicians because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual ...." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) and citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188); see 20 C.F.R. §§ 404.1502, 404.1527(d)(2), 416.902, 416.927(d)(2). If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record . Tonapetyan, 242 F.3d at 1148-

3

1149; Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). Standing alone, the contrary opinion of a non-examining physician cannot constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion. Tonapetyan, 242 F.3d at 1148 (citing Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989)).

**Dr. Kohut**

According to progress notes included in the record, Dr. Kohut treated plaintiff from January 31, 2000 through May 30, 2001. [See AR 263, 272]. In his progress notes dated January 31, 2001, Dr. Kohut indicated that plaintiff had "some depression [and was] sleeping okay" and that "Prozac seems to be helping her mood." [AR 272]. The record indicates that plaintiff was taking Prozac throughout the course of Dr. Kohut's treatment. [AR 262]. On October 30, 2000, Dr. Kohut administered several psychological assessment tests, including the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2"), the Beck Inventory, the Social Phobia Inventory, and the Yale-Brown Obsessive Compulsive Scale ("Y-BOCS"). [AR 265-71]. Based on the results of the MMPI-2, Dr. Kohut opined that plaintiff had "borderline clinical depression." [AR 265]. Dr. Kohut also indicated on the Beck Inventory that plaintiff was "borderline." [AR 267]. The results of the Social Phobia Inventory and the Y-BOCS were normal. [AR 268-71].

In a "Work Capacity Evaluation (Mental)" dated May 1, 2002, Dr. Kohut opined that plaintiff had slight, moderate, marked, and extreme limitations in a number of areas. [AR 510]. Specifically, Dr. Kohut opined that plaintiff had marked limitations in her ability to remember locations and work-like procedures, maintain concentration and attention, maintain an ordinary routine without supervision, make simple work-related decisions, interact with the general public, and accept instructions and criticism from supervisors. [AR 510-11]. Plaintiff had extreme limitations in her ability to work within a schedule, maintain attendance, and be punctual. [AR 510]. Additionally, Dr. Kohut

opined that plaintiff had extreme limitations in her ability to work with others without being distracted and in her ability to respond appropriately to changes in the work environment. [AR 510-11]. Dr. Kohut also opined that plaintiff would be absent from work 3 days or more per month. [AR 511].

The ALJ stated that he found Dr. Kohut's "assessment unpersuasive ... as it is unsupported by any objective medical findings. Indeed, there is no indication a mental status exam was even performed. Accordingly, this assessment is not credible and is given little weight." [AR 18]. Plaintiff contends that the ALJ erred in failing to give proper weight to the opinion of Dr. Kohut.

Although the ALJ was incorrect in saying that no mental status exam was performed [see AR 265-71], the ALJ nonetheless was correct in concluding that Dr. Kohut's assessment was not supported by objective evidence. The results of the tests administered by Dr. Kohut either were normal or showed only borderline depression. [See AR 265-71]. Furthermore, Dr. Kohut's functional assessment was contradicted by that of plaintiff's treating physician, Dr. Pasuhuk, who indicated on a "Mental Disorder Questionnaire" dated July 20, 2000, that plaintiff had "pleasant behavior and attitude," "good orientation and memory," and no abnormalities in reality contact. [AR 242]. He further indicated that plaintiff's mental condition caused "no change in social functioning" or in her ability to concentrate and complete tasks, and that "mostly her physical condition restricts her daily activities." [AR 242]. Finally, on a "PsychiatricReview Technique" form dated September 6, 2000, the non-examining state agency physician indicated that plaintiff's impairments were "non-severe." [AR 259]. That assessment was reviewed and affirmed by another non-examining physician on January 11 2001. [AR 258-259].

There also is evidence that the medication plaintiff was on alleviated her depression. Plaintiff stated that the Prozac she was taking "seems to be helping a little bit better" than previous medications she had been prescribed [AR 47], and Dr. Kohut

5

indicated that "Prozac seems to be helping her mood." [AR 272]. In September 2000, plaintiff also told Douglas Richards, an M.D. at San Antonio Community Hospital, that she was doing "very good," and that she did not "feel like I have too much depression at present." [AR 379].The ALJ acknowledged that plaintiff "has some depressed [sic] and anxiety, which also has a moderate impact on her ability to perform basic work related activities but can be controlled by medication without significant adverse side effects." [AR 19]. An impairment that is controlled by treatment and medications cannot be a basis for disability under the Social Security Act. See Mapes v. Chater, 82 F.3d 259, 264 (8th Cir. 1996) (holding that a mental impairment controlled by medication cannot be considered disabling).

In sum, the ALJ did not err in rejecting Dr. Kohut's opinion regarding plaintiff's mental impairments because he articulated specific, legitimate reasons for doing so.

**Dr. Pasuhuk**

In a report dated July 24, 2000, Dr. Pasuhuk opined that plaintiff had fibromyalgia, arthritis, a history of Lyme Disease, chronic lower back pain and a degenerative disc condition. [AR 247]. Dr. Pasuhuk indicated that plaintiff had thirteen trigger points and "pain in the neck, lower back, [and] upper and lower extremities." [AR 247]. Dr. Pasuhuk also stated that plaintiff had paravertebral muscle spasm, no atrophy, "ok" reflexes and "4/5" motor functioning. [AR 247]. Laboratory findings were negative for rheumatoid factor. [AR 248]. In a "Physical Capacities Evaluation" dated March 16, 2001, Dr. Pasuhuk indicated that plaintiff could sit for 2 hours of an 8-hour work day, stand for 1 hour of an 8-hour work day, walk for 1 hour of an 8-hour work day, and that she could lift 10 pounds occasionally and carry 5 pounds occasionally. [AR 260]. Dr. Pasuhuk also said that plaintiff was precluded from performing fine manipulation or pushing and pulling of arm controls with either hand, and simple grasping with her left hand. [AR 260]. Plaintiff could occasionally bend or reach, but she was precluded from squatting, crawling or climbing. [AR 260]. Dr. Pasuhuk further opined that plaintiff

6

required moderate restriction from being around moving machinery and total restriction from unprotected heights, exposure to marked changes in temperature and humidity, driving automotive equipment, and exposure to dust, fumes and gases. [AR 260].

In a report dated April 11, 2002, Dr. Pasuhuk identified eighteen tender points and explained that "[t]he dots in this figure indicate tender points of the patient's fibromyalgia." [AR 509]. In a report dated April 28, 2002, Dr. Pasuhuk rendered another opinion regarding plaintiff's ability to perform work related activities which essentially is consistent with his earlier opinion. He opined that plaintiff could lift and carry less than 10 pounds, stand and walk less than 2 hours in an 8-hour day, and sit less than 2 hours in an 8-hour day. [AR 512]. Dr. Pasuhuk further indicated that plaintiff must be able to shift at will from sitting to standing or walking, and that she must walk every thirty minutes for a duration of five minutes. [AR 513]. Plaintiff also needed to be able to lie down at unpredictable intervals during the work day "when she becomes very sore and fatigue[d]." [AR 512]. Plaintiff could occasionally twist and climb stairs but she was precluded from stooping, crouching, or climbing ladders. [AR 512]. Dr. Pasuhuk stated that these limitations were supported by findings of fibromyalgia, degenerative disc disease, and arthritis. [AR 513].

Although the ALJ summarized Dr. Pasuhuk's findings in his decision, he dismissed that doctor's opinions as "unpersuasive" and adopted the less stringent limitations suggested by the non-examining medical expert, John Hollingsworth, M.D. [See AR 16-18]. Plaintiff contends that the ALJ erred in failing to give proper weight to the opinion of Dr. Pasuhuk.

To reject the opinion of Dr. Pasuhuk, the ALJ was required to articulate specific and legitimate reasons based on substantial evidence in the record. Tonapetyan, 242 F.3d at 1148-1149; Nguyen, 100 F.3d at 1464; Lester, 81 F.3d at 830-831. The ALJ did not provide such reasons.  Instead, he rejected Dr. Pasuhuk's opinion based on generalizations that are not supported by substantial evidence. The ALJ said that he

found Dr. Pasuhuk's evaluation dated March 16, 2001 unpersuasive because "it is unsupported by any objective medical findings and is generally inconsistent with the substantial evidence of record. Accordingly, this assessment is given little weight." [AR 17]. The ALJ also rejected Dr. Pasuhuk's April 2002 report on the grounds that it "is unsupported by any objective medical findings. Instead, Dr. Pasuhuk appears to rely exclusively on the claimant's subjective complaints in arriving at his assessment. Accordingly, this assessment is not credible and is given little weight." [AR 18].

  The ALJ erred in rejecting Dr. Pasuhuk's opinion due to a lack of objective findings. The ALJ stated that plaintiff did not establish a medically determinable impairment which would be expected to produce the limitations that Dr. Pasuhuk identified, and that although "fibromyalgia is widely diagnosed in the record, there is little actual documentation of clinical signs and laboratory findings of fibromyalgia. Tender points are mentioned but not actually identified." [AR 19]. Although many of plaintiff's laboratory tests and physical examinations were normal [see, e.g. AR 191-200, 202, 205-15, 235-39, 247], that was not sufficient to reject Dr. Pasuhuk's opinion because fibromyalgia is diagnosed solely on the basis of a patient's reported symptoms.[1] Several doctors noted that plaintiff had fibromyalgia. [See AR 56-60, 247, 257, 509, 513-14]. Tender points were specifically identified in a rheumatology report dated November 21, 1999, and by Dr. Pasuhuk in a "Fibromyalgia Syndrome" form dated April 11, 2002. [AR 212, 509]. In addition, plaintiff had a documented history of subjective

---

[1] "Fibromyalgia is a type of muscular or soft-tissue rheumatism that affects principally muscles and their attachment to bones, but which is also commonly accompanied by fatigue, sleep disturbances, lack of concentration, changes in mood or thinking, anxiety and depression." Lang v. Long-Term Disability Plan of Sponsor Applied Remote Technology, Inc., 125 F.3d 794, 796 (9th Cir. 1997). Symptoms include chronic pain, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance. Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004). "Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms. . . . [and] to date there are no laboratory tests to confirm the diagnosis." Benecke, 379 F.3d at 590.

symptoms consistent with fibromyalgia, including chronic pain and fatigue. The record evidences plaintiff's frequent trips to doctors and hospitals, as well as the various medications health care professionals have prescribed to plaintiff in an effort to treat her symptoms. [See AR 174-514]. Given the diagnosis of fibromyalgia by several medical professionals, along with plaintiff's consistent reports of symptoms, it was error for the ALJ to discredit Dr. Pasuhuk's opinion for lack of objective medical findings of fibromyalgia. See Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004) (holding that the ALJ erred in requiring objective evidence of fibromyalgia and that it was sufficient that the plaintiff had a history of symptoms and that her treating physicians had diagnosed her with the disease).

Although the ALJ's decision regarding plaintiff's RFC is supported by the opinion of the non-examining medical expert, Dr. Hollingsworth, the opinion of a non-examining physician alone is not grounds for rejecting the contrary opinion of a treating physician such as Dr. Pasuhuk. See Tonapetyan, 242 F.3d at 1148 (holding that standing alone, the contrary opinion of a non-examining physician cannot constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion)(citing Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989)). Dr. Hollingsworth opined that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, that she could sit for 6 to 8 hours out of an 8-hour day, and that she could stand and walk for 6 to 8 hours out of an 8-hour day. [AR 62-64]. These are the limitations that the ALJ adopted in his decision, but they are not consistent with the opinions Dr. Pasuhuk and the non-examining state agency physician, both of whom imposed more stringent limitations. [AR 250, 260, 512-513].

Because the ALJ based his RFC finding solely on the opinion of the non-examining medical expert and erred in disregarding the treating physician's opinion, the ALJ's decision was neither based on substantial evidence nor free of legal error.

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke, 379 F.3d at 593 (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

The ALJ did not provide legally sufficient reasons for rejecting the opinion of plaintiff's treating physician, Dr. Pasuhuk. The ALJ rejected the restrictions suggested by Dr. Pasuhuk and found plaintiff to be far less restricted in her ability to perform work-related activities. The ALJ's decision was erroneously based on the lack of objective evidence of plaintiff's fibromyalgia and was supported solely by the testimony of non-

10

examining medical expert.

It is clear from the record that if Dr. Pasuhuk's unambiguous opinion were credited, the ALJ would be required to find plaintiff disabled. Susan Allison, the vocational expert, testified that with the restrictions described by Dr. Pasuhuk in a his evaluation dated April 28, 2002, a hypothetical person matching plaintiff's description would not be able to do any work in the national economy. [AR 76]. Since there are no outstanding issues that must be resolved before a determination of disability can be made, the appropriate remedy in this case is remand for an award of benefits.

## Conclusion

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards. Accordingly, the Commissioner's decision is **reversed**, and this case is remanded to the Commissioner for an award of benefits.

**IT IS SO ORDERED.**


Dated:  July 15, 2005

_____/ S /_____
ANDREW J. WISTRICH
United States Magistrate Judge